# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1064

_____

Ferris, Baker Watts, Inc.,     *
          *
     Appellant,     *
          *   Appeal from the United States
    v.         *   District Court for the
          *   District of Minnesota.
Ernst & Young, LLP,      *
          *
     Appellee.      *

_____

Submitted: November 17, 2004
Filed: January 21, 2005

_____

Before SMITH, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Ferris, Baker Watts, Inc. ("FBW") sued Ernst & Young, LLP ("E & Y") for securities fraud. The district court[1] dismissed for failure to state a claim. The issue is whether the allegations show scienter under the pleading requirements of the Private Securities Litigation Reform Act. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

## I.

MJK Clearing, Inc., a broker-dealer, engaged in securities borrowing. In securities borrowing, one party lends a security to MJK, which pays cash collateral slightly exceeding its value. The cash collateral is "marked to market" so that, if the price of the security rises, MJK pays cash to the lender; if the price of the security falls, the lender owes MJK cash.

By March 31, 2001, MJK had paid $160 million cash—representing nearly one half of its accounts receivable and 21 percent of its total assets—to another broker-dealer, Native Nations Securities, Inc., in exchange for borrowed securities. These securities were mostly from three thinly-traded issuers, including GenesisIntermedia, Inc. In September 2001, the price of GenesisIntermedia fell; Native Nations did not pay the cash collateral it owed MJK. MJK collapsed, and the Securities Investor Protection Corporation began liquidation of MJK.

The complaint alleges that after MJK's collapse, FBW, also a broker-dealer, could not reclaim $20 million of cash collateral it had paid MJK. According to FBW, it dealt with MJK relying on E & Y's audit of MJK's financial statements, as of year-end March 31, 2001.

FBW alleges that E & Y's audit violates Section 10(b) of the Securities Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. FBW claims that E & Y recklessly misrepresented that its audit met generally accepted auditing standards (GAAS), and that MJK's financial statements were fairly presented in accordance with generally accepted accounting principles (GAAP).

The district court dismissed, holding that the complaint insufficiently alleges scienter.

## II.

This court reviews de novo a dismissal for failure to state a claim, accepting as true all facts alleged in the complaint. **Fed. R. Civ. P. 12(b)(6)**; ***Kushner v. Beverly Enters., Inc.***, 317 F.3d 820, 824 (8th Cir. 2003); ***In re Navarre Corp. Sec. Litig.***, 299 F.3d 735, 740-41 (8th Cir. 2002). The court disregards "catch-all" or "blanket" assertions not meeting the particularity requirements of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4. *See Navarre*, 299 F.3d at 742, *quoting **Florida State Bd. of Admin. v. Green Tree Fin. Corp.***, 270 F.3d 645, 660 (8th Cir. 2001).

Section 10(b) and Rule 10b-5 prohibit fraudulent conduct in the sale and purchase of securities. *See* **15 U.S.C. § 78j(b)**; **17 C.F.R. § 240.10b-5**. Claims require four elements: "(1) misrepresentations or omissions of material fact or acts that operated as a fraud or deceit in violation of the rule; (2) causation, often analyzed in terms of materiality and reliance; (3) scienter on the part of the defendants; and (4) economic harm caused by the fraudulent activity occurring in connection with the purchase and sale of a security." ***In re K-Tel Int'l, Inc. Sec. Litig.***, 300 F.3d 881, 888 (8th Cir. 2002), *citing* **17 C.F.R. 240.10b-5**. Only scienter—the intent to deceive, manipulate, or defraud—is at issue here. *See **Ernst & Ernst v. Hochfelder***, 425 U.S. 185, 193 & n.12 (1976).

The Reform Act embodies the pleading requirement of Fed. R. Civ. P. 9(b). ***K-Tel***, 300 F.3d at 889; ***Navarre***, 299 F.3d at 742. Under the Act, a complaint must "state 'with particularity' facts giving rise to a 'strong inference' that the defendant acted with the scienter required for the cause of action." ***Green Tree***, 270 F.3d at 654, *quoting* **15 U.S.C. § 78u-4(b)(2)**. Inferences of scienter must be both "reasonable" and "strong" to survive a motion to dismiss. ***Kushner***, 317 F.3d at 827.

Mere negligence does not violate Rule 10b-5. *Ernst & Ernst*, 425 U.S. at 214. Severe recklessness, however, may. *K & S P'ship v. Cont'l Bank, N.A.*, 952 F.2d 971, 978 (8th Cir. 1991), *cert. denied*, 505 U.S. 1205 (1992). Recklessness is

> "limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it."

*Green Tree*, 270 F.3d at 654, *quoting Camp v. Dema*, 948 F.2d 455, 461 (8th Cir. 1991). This level of recklessness requires that defendants make statements that they know, or have access to information suggesting, are materially inaccurate. *Navarre*, 299 F.3d at 746.

## III.

FBW argues it pleaded that E & Y knew of, or had access to, facts that permit a strong inference that its audit opinion was knowingly or recklessly false or misleading. It claims E & Y falsely stated that it conducted the audit in accordance with GAAS, when: (1) E & Y's review of internal control of MJK's securities-borrowing department—the largest and most rapidly growing part of the company—revealed a complete absence of internal control, imposing a duty of heightened scrutiny that E & Y ignored; (2) E & Y failed to investigate whether the $160 million receivable from Native Nations was impaired; and (3) E & Y failed to investigate any subsequent events after the audit (but before issuance of the audit opinion) as to the collectibility of MJK's account receivable from Native Nations, which investigation would have revealed defaults.

FBW further alleges that E & Y disregarded GAAP, which a reasonable accountant follows. Thus, FBW says, a strong inference of scienter arises that E & Y's audit opinion that MJK's financial statements conformed with GAAP was a knowing or reckless misstatement of fact. Specifically, FBW alleges that the financial statements do not disclose as required by GAAP: (1) the concentration of credit risk in the $160 million receivable from Native Nations; (2) the risk that the Native Nations receivable was impaired or uncollectible; and (3) the "going concern" risk from the Native Nations receivable.

Finally, FBW alleges that E & Y failed to disclose—as required by SEC Rule 17a-5, 17 C.F.R. § 240.17a-5—material inadequacies in MJK's internal controls known to E & Y, permitting a strong inference that the nondisclosure was knowing or reckless.

**IV.**

"Allegations of GAAP violations are insufficient, standing alone, to raise an inference of scienter. Only where these allegations are coupled with evidence of corresponding fraudulent intent might they be sufficient." *Navarre*, 299 F.3d at 745 (citations omitted). *See also **Kushner***, 317 F.3d at 827, 831 (affirming dismissal of complaint alleging failure to establish accounting reserves); ***K-Tel***, 300 F.3d at 886, 894-95 (affirming dismissal of complaint based on overstatement of assets and "sheer magnitude" of GAAP violations).

Assuming GAAP and GAAS violations occurred here, FBW's catch-all and blanket assertions that E & Y acted recklessly or knowingly are not "evidence of corresponding fraudulent intent." *See **Navarre***, 299 F.3d at 745. This is not a case like *Green Tree*, where a defendant published statements knowing that crucial information in them was based on discredited assumptions. ***Green Tree***, 270 F.3d at 665.

FBW asserts that the district court misreads *Kushner*, *K-Tel*, and *Navarre*. In fact, the lower court follows not only this court's cases, but also those from other Circuits. *See, e.g.*, **Novack v. Kasaks**, 216 F.3d 300, 309 (2d Cir.) ("[A]llegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim."), *cert. denied*, 531 U.S. 1012 (2000); **Stevelman v. Alias Research Inc.**, 174 F.3d 79, 84 (2d Cir. 1999) ("Allegations of a violation of GAAP provisions or SEC regulations, without corresponding fraudulent intent, are not sufficient to state a securities fraud claim."); **Chill v. Gen. Elec. Co.**, 101 F.3d 263, 270 (2d Cir. 1996) (same); **Fidel v. Farley**, 392 F.3d 220, 230 (6th Cir. 2004) ("[T]he failure to follow generally accepted accounting procedures does not in and of itself lead to an inference of scienter."); **DSAM Global Value Fund v. Altris Software, Inc.**, 288 F.3d 385, 387 (9th Cir. 2002) (affirming dismissal of allegations of a "seriously botched audit" and "a compelling case of negligence—perhaps even gross negligence"); **In re Software Toolworks Inc. Sec. Litig.**, 50 F.3d 615, 627-28 (9th Cir. 1994) (affirming summary judgment for auditor, stating that "mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter"), *cert. denied sub nom.* **Montgomery Sec. v. Dannenberg**, 516 U.S. 907 (1995).

FBW repeatedly asserts that E & Y's audit was so cursory and superficial as to amount to "no audit at all." *See* **Software Toolworks**, 50 F.3d at 628 (auditing that is "no audit at all" shows scienter). The facts alleged here show otherwise. FBW's complaint says that E & Y was fully aware of the risks associated with MJK's securities borrowing and lending operations, and had an audit plan that recognized the need for closer testing of securities borrowing. FBW states that E & Y did confirm the account receivable with Native Nations, noting its excess over the value of the collateral securities, and its concentration in three issuers. According to the complaint, E & Y did interview MJK's securities-borrowing department manager, who described the processes and procedures, and represented that he performed credit

reviews "anywhere from monthly to annually by reviewing other Broker FOCUS reports." FBW pleads that E & Y examined five files of MJK's (approximately) 60 customers for the presence of signed agreements and annual credit evaluations, inquired as to deficiencies in the files, and verified that securities-borrowing personnel prepared numerous reports, including daily "Balance Order Fail Reports." According to FBW, E & Y conducted tests of internal control activities, and identified reconciliations of balance-sheet cash accounts to bank accounts, and balance-sheet securities ledgers to securities accounts. E & Y concluded that internal controls were effective, and could be relied upon to reduce the substantive audit procedures (and increase reliance on management's representation that no subsequent events occurred after fieldwork, but before issue of the opinion). In sum, FBW alleges a poor audit, not the intent to deceive, manipulate, or defraud required for securities fraud.

The judgment of the district court is affirmed.

_____