SMITH, Circuit Judge.
Ripplin Shoals Land Company, LLC (“RSLC”) brought suit against the United States Army Corps of Engineers (“the Corps”), requesting declaratory and in-junctive relief. The district court dismissed RSLC’s complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), stating that its prior orders in the separate but somewhat related case of Arkansas Nature Alliance, Inc. v. United States Amy Corps of Engineers, No. 02-00037, 2002 WL 32897558 (E.D. Ark. filed Apr. 9, 2002), had preclusive effect and barred the instant action. We reverse and remand for further proceedings.[1]
I. Facts
We accept as true all facts alleged in the complaint. RSLC, the developer of Lan-ders Island on the White River, desired improved access to enable development of the island for recreation and vacation homes. RSLC applied to the Corps for a permit to add to an already existing low-water bridge.' The Corps issued a Letter of Permission (“LOP”) to allow the proposed changes. After receiving the LOP, RSLC constructed the improved low-water bridge and began developing a 49-lot subdivision on Landers Island. Thereafter, an environmental group, the Arkansas Nature Alliance, sued the Corps, challenging the LOP issued to RSLC, claiming a violation of the National Environmental Policy Act (“NEPA”). Arkansas Nature Alliance, Inc. v. United States Army Corps of Engineers, No. 02-00037, 2002 WL 32897558 (E.D. Ark. filed Apr. 9, 2002). RSLC moved to intervene. The district court allowed RSLC to intervene, as the developers, for remedial issues and to participate in all further proceedings in which they had an interest.
In Arkansas Nature Alliance, the district court found that the Corps’ issuance of the LOP to modify the existing low-water bridge was not reasonable and ordered the Corps to revoke it. The district court ordered the Corps to “address the original application under the full permit process regulation and NEPA regulation, which requires the preparation of the proper environmental documents .... ” The district court also directed that the bridge be returned to its original dimensions. As intervenors, RSLC filed a motion for clarification, asking whether an Environmental Impact Statement (“EIS”) *1040 was necessary in the permitting process. The district court entered an order specifically stating that the permitting process used by the Corps was to include an EIS.
Rather than continue with its plans, RSLC decided to withdraw its application to improve the already existing low-water bridge, which was the subject of the Arkansas Nature Alliance litigation. Instead, RSLC submitted a new application that described an entirely new span bridge design. RSLC asked the Corps to authorize the span bridge under the Nationwide Permit Process (“NWP”).[2] • Thereafter, RSLC removed the improvements to the existing low-water bridge and returned the structure to its original low-water dimensions.
RSLC submitted a new permit application to the Corps, requesting approval for construction of a span bridge pursuant to Nationwide Permit 14 for Linear Transportation Crossings (“NWP14”). Before processing RSLC’s new span bridge application, the Corps sought relief under Fed. R.Civ.P. 60(b)(5) from the order in the Arkansas Nature Alliance case, which required an EIS for the prior low-water bridge modifications. The district court denied the Corps’ motion.
Relying on the district court’s order regarding the Corps’ Rule 60(b)(5) motion, the Corps advised RSLC that a Nationwide Permit could not be issued and that the project would require a full public interest review, including an EIS to be prepared by a third party contractor selected by the Corps at RSLC’s expense. Specifically, the Corps stated “[a]s directed by the court’s order, your request for a span bridge to Lander’s Island cannot be issued through the Corps of Engineer’s Nationwide Permit Program.” The Corps instructed RSLC that it had 15 days to respond to these requirements or its application would be withdrawn.
RSLC objected to the Corps’ approach, arguing that the Corps’ regulations require a review of the span bridge application for eligibility under NWP 14 apart from any prior consideration of the low-water bridge application. Further, RSLC stated that because the Corps had not made a final decision on the span bridge and, thus, had no administrative record, the Arkansas Nature Alliance court had no jurisdiction to make decisions regarding the span bridge application. The Corps then notified RSLC of its final agency action on the pending span bridge application, stating “your application has been officially withdrawn and the permitting evaluation process has been closed.” RSLC filed the instant action to compel the Corps to proceed on its application for a span bridge under the NWP. The Corps filed a motion to dismiss pursuant to Rule 12(b)(6). The district court granted the Corps’ motion, stating that its prior orders in the Arkansas Nature Alliance case barred the instant action under the doctrines of res judicata and collateral estop-pel.
II. Discussion
RSLC contends that the district court erred in dismissing its complaint pursuant to Rule 12(b)(6), arguing that the district court’s prior decisions in Arkansas Nature Alliance have no preclusive effect on RSLC’s right to have its new permit application for a different project reviewed for verification under the NWP. RSLC maintains that the Arkansas Nature Alliance court had no jurisdiction to rule on future permit decisions by the Corps based upon new applications.
*1041 Moving to the merits of the case, RSLC argues that, as a matter of law, the Corps must review each incoming application for NWP verification, and in refusing to do so in this case, the Corps violated its own regulations. RSLC avers that the Corps’ argument that it has discretion to deny any Nationwide Permit application is disingenuous. The district court relied on the Corps’ discretionary argument, claiming that even if it were to reach the merits of RSLC’s claims, the conclusion would be the same. However, the Corps admitted that it was coerced by the district court to adopt its advisory opinion rather than rely on the information in the administrative record. In fact, in the Corps’ letter to RSLC regarding its decision on the span bridge, the Corps stated that “[a]s directed by the court’s order, your request for a span bridge cannot be issued through the Corps of Engineer’s Nationwide Permit Program.” This statement illustrates that the Corps never deferred to the discretion of the District Engineer. For these reasons, RSLC urges this court to reverse the judgment of the district court and remand this case for further proceedings.
The Corps responds by stating that res judicata and collateral estoppel preclude RSLC from re-litigating the requirements necessary for approval of a Corps permit regarding a bridge to Landers Island. Moreover, the Corps claims that the issuance of a Nationwide Permit is at the discretion of the District Engineer, and he is authorized to set the same requirements as imposed by the district court. In the alternative, the Corps maintains that even if res judicata and collateral estoppel did not apply, this lawsuit is unfounded.
The Corps states that permit applicants are not entitled to a Nationwide Permit as a matter of right. As long as there is reason to believe that there is public dissent to the proposed project, the District Engineer has the discretion to require the applicant to go through the individual permit application process.[3] Further, the Corps argues that it can rely on the prior order of the district court in exercising its discretion on whether a Nationwide Permit is appropriate. The Corps claims that in this case, as was shown from the earlier lawsuit, there was public dissent against the project, not only because of the form of the low-water bridge, but also because of the cumulative impacts of constructing a subdivision on a low-lying island in the middle of the White River. These concerns did not change between the end of the original lawsuit and the time RSLC filed its application for a span bridge. The Corps posits that regardless of what the district court said in its Rule 60(b) ruling, the District Engineer would have been negligent to ignore the possible cumulative impacts and public opinion against the bridge. In sum, the Corps urges this court to affirm the district court’s dismissal of RSLC’s action based on res judicata and collateral estoppel.
*1042 We review de novo the district court’s dismissal for failure to state a claim pursuant to Rule 12(b)(6), taking all facts as alleged in the complaint as true. Alpharma, Inc. v. Pennfield Oil Co., 411 F.3d 934, 937 (8th Cir.2005); Ferris, Baker Watts, Inc. v. Ernst & Young, LLP, 395 F.3d 851, 853 (8th Cir.2005). Both res judicata and collateral estoppel have the impact of foreclosing future litigation based upon factors found to exist in past but related litigation. Upon review, we find that neither the doctrines of res judi-cata nor collateral estoppel preclude RSLC from pursuing its complaint against the Corps.
A. Res Judicata
RSLC contends that res judicata does not bar its claim because its claim did not exist when the first suit was litigated. RSLC submits that the Corps could not have denied an application that did not exist; thus, res judicata, or claim preclusion, cannot apply. Further, there were no claims presented in the previous litigation between RSLC and the Corps, and no claims between RSLC and the Corps were resolved in Arkansas Nature Alliance. Lastly, because RSLC’s span bridge application was neither submitted to nor denied by the Corps at the time of the first case, RSLC had no opportunity to litigate the issue. In response, the Corps states that res judicata applies to those in privity with the parties in the litigation. In the district court’s February 14, 2003, Arkansas Nature Alliance decision, it allowed RSLC’s predecessors in interest to intervene in the litigation and become subject to that decision and any future orders. When considering whether to proceed under the NWP for the span bridge, the Corps sought clarification from the district court in its Rule 60(b) motion, and the district court held, in effect, that an EIS was required. The Corps argues that it was representing the interests of RSLC in filing its Rule 60(b) motion. Moreover, RSLC filed a brief in support of the Corps’ argument. Thus, the Corps posits that RSLC had a full and fair opportunity to litigate the issue in the previous case.
Res judicata applies to prevent repetitive suits involving the same cause of action. Lundquist v. Rice Mem’l Hosp., 238 F.3d 975, 977 (8th Cir.2001). “Final judgment on the merits of an action precludes the same parties from relitigating issues that were or could have been raised in that action.” Id. There are three elements this court must consider to determine whether res judicata will bar a party from asserting a claim: (1) whether the prior judgment was entered by a court of competent jurisdiction; (2) whether the prior decision was a final judgment on the merits; and (3) whether the same cause of action and the same parties or their privies were involved in both cases. Id. “If the three elements are met, the parties are thereafter bound ‘not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.’ ” Id. (quoting C.I.R. v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948)). However, res judicata does not apply to claims that did not exist when the first suit was filed. Id.
We agree with RSLC that res judicata does not act to bar its claims against the Corps in the instant lawsuit. First, while the prior judgment in Arkansas Nature Alliance was entered by a court of competent jurisdiction, the district court did not have the authority to issue what was, in essence, an advisory opinion on any separate future applications filed by RSLC, i.e., RSLC’s span bridge application. “One kind of advisory opinion is an opinion advising what the law would be upon a hypothetical state of facts.” Pub. Water Sup *1043 ply Dist. No. 8 v. City of Kearney, 401 F.3d 930, 932 (8th Cir.2005) (internal quotations and citations omitted). Article III limits the federal courts to deciding “Cases” and “Controversies” and, thus, prohibits the district court from issuing advisory opinions. Id. Moreover, the controversy must be live when the court decides the issues. South Dakota v. Hazen, 914 F.2d 147, 150 (8th Cir.1990). Here, when the Corps sought what was essentially an advisory opinion when it filed its Rule 60(b) motion, it sought clarification on an issue that was never before the district court in the Arkansas Nature Alliance case, i.e., an entirely new span bridge. Therefore, any opinion given by the district court was no more than advisory.
Second, the prior decision in Arkansas Nature Alliance was not a final decision on the merits of RSLC’s span bridge application. In fact, RSLC’s span bridge application did not exist at the time of the district court’s final decision on the merits. “ ‘It is well settled that claim preclusion [res judi-cata] does not apply to claims that did not arise until after the first suit was filed.’ ” Lundquist, 238 F.3d at 977 (quoting Baker Group, L.C. v. Burlington Northern & Santa Fe Ry. Co., 228 F.3d 883, 886 (8th Cir.2000)) (emphasis in original). Lastly, the same cause of action is not involved in both cases. The Arkansas Nature Alliance case involved a cause of action by an environmental group against the Corps for issuing the LOP to RSLC for improvements to an existing low-water bridge. The district court held that those improvements were not reasonable and ordered RSLC to return the existing low-water bridge back to its original dimensions. The district court specifically stated, “I order the Corps and the individual Defendant to address the original application under the full permit process regulations and NEPA regulations, which require the preparation of the proper environmental documents, public notice, and hearing.” (emphasis added). RSLC complied with that order. The instant case was brought by RSLC to compel the Corps to consider its new span bridge application under NWP 14. This span bridge application was submitted after, and as an alternative to, the low-water bridge modifications addressed in the Arkansas Nature Alliance case. Consequently, the causes of action are different. Because the same cause of action is not at issue in these two cases, we find that res judicata does not bar RSLC from pursuing the instant cause of action against the Corps.
B. Collateral Estoppel
RSLC asserts that collateral estoppel should not bar the instant action because the issues here are not identical to those in Arkansas Nature Alliance. In fact, the district court did not specify the issue(s) it believed were being relitigated for purposes of applying collateral estoppel. Further, the issues raised by the Corps’ Rule 60(b) motion in Arkansas Nature Alliance are not identical to those issues in this case. At the time of the Rule 60(b) motion, the Corps had not determined the RSLC span bridge permit issue, and no administrative record had been compiled. RSLC argues that the Corps was asking the Arkansas Nature Alliance court to give an advisory opinion about a hypothetical future action. RSLC states that the Corps cannot abdicate its substantive decision-making duty by asking a court for advice. In that same vein, RSLC posits that district courts cannot advise federal agencies, they can only review final agency actions. RSLC also claims that it was not allowed a full and fair opportunity to be heard on the issues presented by this case; no such review was possible at the time because there was no final agency action.
*1044 The Corps responds by claiming that collateral estoppel prevents re-litigation of issues actually litigated in a prior lawsuit. The Corps states that even though RSLC was not a named party in the Arkansas Nature Alliance litigation, its interests were represented by the Corps, and RSLC was granted intervenor status. The arguments being made now by RSLC are the same that were made in the Corps’ Rule 60(b) motion, i.e., that the plans have substantially changed and an individual permit, including an EIS, should not be required. The requirement of an EIS before the Corps can authorize RSLC to provide access to the island has been litigated and decided.
We apply the doctrine of collateral estoppel when: (1) the issue sought to be precluded is identical to the issue previously decided; (2) the prior action resulted in a final adjudication on the merits; (3) the party sought to be estopped was either a party or in privity with a party to the prior action; and (4) the party sought to be estopped was given a full and fair opportunity to be heard on the issue in the prior action. Wellons, Inc. v. T.E. Ibberson Co., 869 F.2d 1166, 1168 (8th Cir.1989) (citing Arkla Exploration Co. v. Texas Oil & Gas Corp., 734 F.2d 347, 356 (8th Cir.1984), cert. denied, 469 U.S. 1158, 105 S.Ct. 905, 83 L.Ed.2d 920 (1985)). In assessing this issue de novo, we address the four-element analysis seriatim.
First, the issue sought to be precluded is not identical to the issue previously decided. The previous issue concerned RSLC’s LOP to improve the existing low-water bridge. The current issue of RSLC’s new span bridge application submitted to the Corps was not before the district court in the Arkansas Nature Alliance case. Second, as stated above, the prior action did not result in a final adjudication on the merits of the instant action. The prior action resulted in a final adjudication on the merits of RSLC’s LOP to improve the already existing low-water bridge but not as to the construction of a new span bridge. Concerning the third factor, there is no dispute that RSLC was a party in the Arkansas Nature Alliance case because of its intervention.
Lastly, RSLC was not given a full and fair opportunity to be heard on the issue of its span bridge application in the prior action. The Corps had neither approved nor rejected RSLC’s span bridge application when it filed the Rule 60(b) motion before the district court. And after the district court’s ruling on the Rule 60(b) motion, the Corps cited the district court as its reason for refusing to allow the span bridge application to proceed under the NWP. We decline to rely on the fact that the District Engineer could have exercised his discretion and denied RSLC’s permit, as argued by the Corps and the district court, because the District Engineer did not exercise his discretion in this case; the permit was denied as a direct result of the district court’s advisory opinion. Thus, RSLC was not given a full and fair opportunity to litigate this issue before the district court. This case is unique and our holding does not establish any general right to litigate the Corps’ decision to deny NWP authorization. The Corps may yet deny RSLC’s span bridge application for treatment under NWP 14, but, on this record, RSLC is nonetheless entitled to having the Corps decide the application on its own merits.
Based on the foregoing de novo analysis, we conclude that the district court erred in granting the Corps’ motion to dismiss pursuant to Rule 12(b)(6). Accordingly, we reverse and remand for further proceedings consistent with this opinion.

. RSLC only appeals the dismissal of Count I of its complaint.

. The NWP provides a procedure for abbreviated review of projects deemed to have minimal environmental impacts. If approved under the NWP, RSLC's new project would avoid the expense of an EIS.

. 33 C.F.R. § 330.1(d) — Nationwide Permit Program — states in relevant part:
Discretionary Authority. District and division engineers have been delegated a discretionary authority to suspend, modify, or revoke authorizations under an NWP. This discretionary authority may be used by district and division engineers only to further condition or restrict the applicability of an NWP for cases where they have concerns for the aquatic environment under the Clean Water Act section 404(b)(1) Guidelines or for any factor of the public interest.... If the DE [District Engineer] finds that the proposed activity would have more than minimal individual or cumulative net adverse effects on the environment or otherwise may be contrary to the public interest, he shall modify the NWP authorization to reduce or eliminate those adverse effects, or he shall instruct the prospective permit-tee to apply for a regional general permit or an individual permit.