# United States Court of Appeals
### For the Eighth Circuit

_____

No. 14-2588
_____

Ben Doud

*Plaintiff - Appellee*

v.

Toy Box Development Co., LLC; Michael Erickson; Michael Morse

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: April 16, 2015
Filed: August 18, 2015

_____

Before BYE and SMITH, Circuit Judges, and SCHILTZ,[1] District Judge.

_____

BYE, Circuit Judge.

Ben Doud sued Toy Box Development Company, LLC (Toy Box) alleging Toy Box breached an investment agreement with him by releasing escrow funds to itself before securing the necessary capital required by the agreement. Doud also claimed

_____

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota, sitting by designation.

Toy Box's conduct violated various federal and state securities laws, and breached fiduciary duties owed to him. The district court[2] granted partial summary judgment to Doud, and then entered a final judgment in Doud's favor after the parties resolved the issue of damages and Doud dismissed his remaining claims. Toy Box now appeals the district court's grant of summary judgment. We affirm.

I

Toy Box is a limited liability company organized in December 2007 for the purpose of operating storage facility sales businesses. In early 2008, Toy Box distributed an Offering Circular to potential investors, including Doud. The investment offer contained an "all or nothing" clause which provided that any funds received from investors would be held in escrow, and not released to Toy Box, unless a minimum of $500,000 in capital was deposited by December 31, 2008. If Toy Box did not raise minimum amount of capital by the deadline, the investment offer would terminate and Toy Box would return the unused funds to investors.

Doud agreed to invest in the venture. In April 2008, he executed a subscription agreement and sent Toy Box a check for $100,000. In June 2008, Toy Box amended its offering by lowering the minimum capital requirement from $500,000 to $350,000. Doud agreed to the amendment.

By July 11, 2008, Toy Box had raised $200,000 in capital, which included the $100,000 invested by Doud. Despite not having reached the $350,000 minimum required by the amended offering, one of Toy Box's managers authorized the release of the escrow funds to Toy Box. Three days later, Toy Box represented to investors

[2]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

that it had "achieved its threshold funding level and exited escrow with $425,000 in place."

In 2011, Toy Box suffered substantial financial losses, which it contends were the result of the 2008 economic crisis. Doud lost his $100,000 investment. In July 2012, Doud filed suit against Toy Box alleging the company breached the investment agreement by releasing the escrow funds before raising the minimum amount of capital required by the offering. Doud also alleged Toy Box's conduct violated § 10(b) of the Securities Exchange Act (15 U.S.C. § 78j(b)), and Rules 10b-5 (17 C.F.R. § 240.10b-5) and 10b-9 (17 C.F.R. § 240.10b-9) of the Federal Securities Exchange Commission (SEC), as well as Section 502.509(2) of the Iowa Uniform Securities Act.

In answers to interrogatories filed in the litigation, Toy Box admitted it released the escrow funds to itself before receiving the minimum amount of capital required by its offering. Doud moved for summary judgment. The district court granted the motion in part and denied it in part. The district court found Toy Box had breached its agreement with Doud by releasing funds held in escrow before reaching the minimum threshold of funding required by the investment offering. The district court further found Toy Box's conduct violated both Rules 10b-5 and 10b-9 of the Securities Exchange Act, specifically determining Doud had established the scienter required to find violations of the SEC's rules. The district court also rejected Toy Box's defense that it had broken escrow in good faith upon the advice of counsel. Finally, the district court found Toy Box's conduct violated the Iowa Uniform Securities Act. The district court left the issue of damages for a trial, and denied summary judgment on Doud's claim for breach of fiduciary duties.

Following the grant of partial summary judgment, Doud asked the district court to set his damages at $100,000 on the claims for which summary judgment had been granted. The district court entered an order granting Doud's request. After Doud

dismissed his remaining claims, the district court entered a final judgment in Doud's favor.  Toy Box then filed this timely appeal.

## II

We review the district court's grant of summary judgment de novo.  Loomis v. Wing Enters., Inc., 756 F.3d 632, 634 (8th Cir. 2014).

Toy Box first contends the district court erred in granting summary judgment on Doud's Securities Exchange Act claims.  We start with Doud's Rule 10b-9 claim.  Under Section 10(b) of the Securities Exchange Act, it is "unlawful for any person . . . [t]o use or employ, in connection with the . . . sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. § 78j(b).  Rule 10b-9 is one of the rules the SEC promulgated to implement this section, which specifically addresses the type of "all or nothing" offering at issue in this case.

Rule 10b-9 states in relevant part:

> It shall constitute a manipulative or deception device or contrivance, as used in section 10(b) of the Act, for any person, directly or indirectly, in connection with the offer or sale of any security, to make any representation [t]o the effect that the security is being offered or sold on an "all-or-none" basis, unless the security is part of an offering or distribution being made on the condition that all or a specified amount of the consideration paid for such security will be promptly refunded to the purchaser unless (i) all of the securities being offered are sold at a specified price within a specified time, and (ii) the total amount due to the seller is received by him by a specified date[.]

17 C.F.R. § 240.10b-9 (internal footnote omitted).

The SEC adopted Rule 10b-9 to "ensure that those who invest in a venture under the condition that it will not go forward unless adequately capitalized are not at risk of losing their investment if the condition is not met." In re Nat'l P'ship Invs. Corp., S.E.C. Release No. 7425, 1997 WL 349021, at *4 (June 25, 1997). A violation of Rule 10b-9 occurs when an entity's conduct consists of "improperly closing the initial offering rather than returning the proceeds of the sales to the investors." Howard v. S.E.C., 376 F.3d 1136, 1141 (D.C. Cir. 2004). Because Rule 10b-9 was promulgated pursuant to Section 10(b), Doud was required to show Toy Box acted with scienter in violating Rule 10b-9. See Aaron v. SEC, 446 U.S. 680, 689-91 (1980). In the context of an "all or nothing" offering, "[a] knowledge of what one is doing and the consequences of those actions suffices" to show scienter. Svalberg v. S.E.C., 876 F.2d 181, 184 (D.C. Cir. 1989) (quoting SEC v. Falstaff Brewing Corp., 629 F.2d 62, 77 (D.C. Cir. 1980)).

Here, it is undisputed Toy Box's initial and amended offerings contained "all or nothing" provisions, and Toy Box represented the offerings as an "all or nothing" transaction. Toy Box and its managers admitted they broke escrow before receiving $350,000 in investor funds. Finally, after breaking escrow, Toy Box misrepresented to investors that it had reached the minimum capital required by its offering. This evidence is sufficient to show Toy Box violated Rule 10b-9, and acted with the necessary scienter in doing so. See In re Nat'l P'ship Invs. Corp. 1997 WL 349021, at *4 (indicating scienter exists when the defendants, "each of whom was instrumental in causing escrow to be broken for the initial phase of the offering, knew or should have known that the final subscription did not come from a bona fide investor").

Toy Box acknowledges that it knew it had not received $350,000 in actual funds, but contends it did not violate Rule 10b-9 because it had more than $350,000 in subscriptions at the time it broke escrow. But Rule 10b-9 requires sellers to have actually received the funds prior to breaking escrow; it is not enough for the seller

merely to have commitments to buy the security being sold.  See Proposal to Adopt Rule 10b-9 Under the Securities Exchange Act of 1934, S.E.C. Release No. 6864, 1962 WL 68100, at *1 (July 30, 1962) ("It is the purpose of the proposed rule to prohibit any person from making any representation to the effect that the security is being offered on an 'all or-none' basis unless it is clear that the amount due to the purchaser is to be refunded to him unless all of the securities being offered are sold and the seller *receives* the total amount due to him in connection with the distribution." (emphasis added)).

In addition, the additional subscriptions which would have vaulted Toy Box over the $350,000 minimum even if the funds had been received were not bona fide investments because either the Toy Box defendants themselves or their spouses or parents had pledged the additional funding.  Rule 10b-9 was specifically designed to prohibit situations where, like here, investments are pledged through non-bona fide nominee accounts to create the appearance that the minimum amount of capital required by an offering has been reached.  See In re: Requirements of Rules 10b-9 and 15c2-4, S.E.C. Release No. 11532, 1975 WL 163128 at *1 (July 11, 1975) ("[U]nder Rule 10b-9, an offering may not be considered 'sold' . . . unless all the securities required to be placed *are sold in bona fide transactions and are fully paid for*.  It is clearly contrary to the intent and purpose of the rule to declare an offering all sold . . . on the basis of non-bona fide sales designed to create the appearance of a successful completion of the offering, such as purchases by the issuer through nominee accounts or purchases by persons whom the issuer has agreed to guarantee against loss." (emphasis added)); see also In re Nat'l P'ship, 1997 WL 349021, at *4 (requiring funds to come from a bona fide investor).

Based on this record, the district court properly determined the investment offer was an "all or nothing" agreement under Rule 10b-9, and that Toy Box violated Rule 10b-9 by breaking escrow without having received $350,000 in bona fide investments.

Moving next to Doud's Rule 10b-5 claim, the evidence he marshaled to prove Toy Box violated Rule 10b-9 also suffices to show Toy Box violated Rule 10b-5's more general prohibition against securities fraud and misrepresentations. See Abbott v. Equity Grp., Inc., 2 F.3d 613, 629 n.56 (5th Cir. 1993) (noting a violation of Rule 10b-9 "is often coterminous with" a violation of Rule 10b-5). By breaking escrow without having received the necessary minimum funding, Toy Box knowingly employed a manipulative or deceptive device or contrivance in connection with a sale of security and misrepresented the circumstances under which Doud's funds would be released from escrow. In addition, Toy Box never informed Doud of the misrepresentation, and instead advised Doud that Toy Box had raised $425,000 when it knew that statement was false. Finally, Doud eventually lost his investment because Toy Box was not adequately capitalized. For the reasons stated by the district court, we agree this conduct justified granting summary judgment on Doud's Rule 10b-5 claim. See Ferris, Baker Watts, Inc. v. Ernst & Young, LLP, 395 F.3d 851, 853-54 (8th Cir. 2005) (setting forth the elements of a Rule 10b-5 claim).[3]

Relying upon the same arguments it advanced to challenge the district court's rulings with respect to Doud federal law claims, Toy Box next contends the district court erred in granting summary judgment on Doud's claim under the Iowa Uniform Securities Act which, similar to Rule 10b-5, prohibits misrepresentations or omissions of material facts in connection with the sale of securities.[4]

---

[3]On appeal, Toy Box does not claim as a defense that it broke escrow in good faith upon the advice of counsel, so we need not address that issue.

[4]More specifically, the relevant section of the Iowa Uniform Securities Act provides:

A person is liable to the purchaser if the person sells a security in violation of section 502.301 or, by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which it

The district court determined Doud was required to prove the following four elements to prove a violation of Iowa Code § 502.509(2):

> (1) that the defendant sold a security; (2) that the defendant used a misleading or untrue material fact or omission in making that sale; (3) that the purchaser did not know the statement or omission was untrue or misleading; and (4) had the purchaser exercised reasonable care [he] would not have uncovered the falsity of the material misstatement or omission.

Addendum at 61.

Toy Box contended in the district court that Doud failed to show evidence of scienter. In response, Doud argued in the district court and now on appeal that the Iowa Uniform Securities Act uses language identical to language found in Section 17 of the Federal Securities Act of 1933 and that – unlike claims under Rules 10b-5 and 10b-9 – proof of scienter is not required under Section 17 of the 1933 Act. See Aaron, 446 U.S. at 697; see also Foster v. Alex, 572 N.E.2d 1242, 1245 (Ill. App. Ct. 1991) (relying upon Aaron to conclude proof of scienter is not required to prove a violation of the Illinois Securities Act).

We have already addressed and rejected Toy Box's contention that Doud failed to prove scienter for purposes of his Rule 10b-9 and 10b-5 claims. This renders irrelevant Toy Box's sole challenge to the district court's grant of summary judgment on Doud's state security law claim. Doud proved the necessary scienter even if we

---

> is made, not misleading, the purchaser not knowing the untruth or omission and the seller not sustaining the burden of proof that the seller did not know and, in the exercise of reasonable care, could not have known of the untruth or omission.

Iowa Code § 502.509(2).

assumed the Iowa Uniform Securities Act required proof of scienter. As a consequence, we need not address at this time whether the Iowa Uniform Securities Act requires proof of scienter.

Finally, Toy Box contends the district court erred in granting summary judgment on Doud's breach of contract claim. To prove his breach of contract claim, Doud was required to show: "(1) the existence of a contract; (2) the terms and conditions of the contract; (3) that [he] has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that [he] has suffered damages as a result of the breach." Molo Oil Co. v. River City Ford Truck Sales, Inc., 578 N.W.2d 222, 224 (Iowa 1998). Doud proved Toy Box's offerings contained an express promise not to break escrow until it had reached $350,000 in subscription proceeds, and that Toy Box breached the agreement by breaking escrow before receiving the necessary funds required by the offering. In addition, Doud lost his investment as a result of Toy Box's breach. Based on these facts, the district court did not err in granting summary judgment on Doud's breach of contract claim.

## III

We affirm the judgment of the district court.

_____