# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3127

_____

Dorothy L. Clark,                                    *
                                                     *
      Plaintiff - Appellant,             *
                                                     *  Appeal from the United States
    v.                                      *  District Court for the Southern
                                                     *  District of Iowa.
United States Department of                          *
Agriculture; Mike Johanns,  Secretary,               *
                                                     *
      Defendants - Appellees.            *

_____

Submitted: April 15, 2008
Filed:  August 12, 2008

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Appellant Dorothy L. Clark appeals the district court's[1] refusal to grant a declaratory judgment and set aside a United States Department of Agriculture (USDA) determination that she converted wetlands in violation of the Swampbuster provisions of the Food Security Act of 1985, codified as amended at 16 U.S.C. §§ 3801, 3821-24 (2000).  Because the USDA determined she had converted wetlands, Clark became ineligible for certain farm program payments.  Clark challenges the USDA's

_____

[1]The Honorable Robert W. Pratt, Chief Judge, United States District Court for the Southern District of Iowa.

interpretation of the term "converted wetland" and argues the evidence is insufficient to support the USDA's determination that she converted wetlands. In addition, she challenges a USDA regulation that placed the burden on her to request, and prove her eligibility for, a "minimal effect" exemption. Given the deference we owe to the USDA's regulation, its interpretation of the applicable law, and its factual determinations, we affirm the district court's denial of relief.

I. Background

The Swampbuster provisions authorize the USDA to make determinations as to whether certain lands qualify as wetlands and whether wetlands that have been manipulated qualify as converted wetlands. 16 U.S.C. § 3801(a)(6) & (18) (defining "converted wetland" and "wetland," respectively); id. §§ 3821(e), 3822 (authorizing the USDA to make such determinations). To deter the conversion of wetlands, a person determined to have converted wetlands may become ineligible to receive farm program payments. 16 U.S.C. § 3821(c). An exception to the ineligibility provision exists for manipulations determined to have only a minimal effect upon wetland and biological functions. 16 U.S.C. § 3822(f). The case below involved wetlands determinations, converted wetlands determinations, and the minimal effect exemption. The present appeal involves only the converted wetlands determinations and the minimal effect exemption.

Dorothy Clark owns a farm in Boone County, Iowa. She does not actively work her farm, but with the assistance of her son, she makes decisions regarding the farm and leases the farm to a tenant. A creek running through the farm forms a series of oxbows that previously served as pasture ground. In an effort to increase income from the farm, Clark and her son decided to convert the pasture ground for use in row cropping. Neither Clark nor the USDA alleges that the tenant was involved in the decision to manipulate the land or in any subsequent manipulations to the land.

On November 18, 2002, Clark's son sought a wetlands determination from the Natural Resource Conservation Service, an agency within the USDA. After repeated visits, Jared Finley, a district conservationist, determined that eight sites in the area of the oxbows contained a total of five acres of wetlands. In an April 16, 2003 letter, Finley set forth his technical determination and notified Clark she was not to manipulate the wetlands without first contacting the USDA.[2] In addition, the letter indicated that certain permits might be required from the United States Army Corps of Engineers and from the Iowa Department of Natural Resources, but that any permits should be presented to the USDA and that the USDA could inform her of her compliance options and any available exemptions.[3]

---

[2]The letter clearly stated that Clark was not to fill, level, or clear the oxbows identified as wetlands:

> In order to maintain your USDA program eligibility and comply with the Clean Water Act, contact <u>us prior to</u> performing the following activities:
>
> - Land clearing
> - Drainage (tile or open ditching)
> - Drainage maintenance
> - Filling, leveling, or dredging
> - Land use changes
> - Any activity involving "other waters of the United States" as defined above

[3]The language in the letter relevant to permits was as follows:

> This project may qualify for Corps of Engineers (COE) Engineering permit exemption under the wetland conservation provisions of the Food Security Act. You must pursue your next action with the COE to obtain a Clean Water Act (CWA) Section 404 permit. As part of the process you may also be required to obtain CWA Section 401, Water Quality Certification from the Iowa Department of Natural Resources (IDNR). *. . . Upon receipt of a copy of the COE permit, NRCS will be able to*

After receiving the letter, Clark contacted an attorney to seek assistance in obtaining permits from the IDNR and the COE. The attorney eventually advised her that the COE did not claim jurisdiction over the land in question and that the IDNR did not require her to obtain any permits. Notwithstanding the language in Finley's April 16, 2003 letter requesting that Clark contact NRCS prior to manipulating the land, she proceeded to fill and level the wetlands without contacting NRCS.

On December 8, 2004, after receiving several "whistleblower" reports of bulldozing activities on the Clark property, Finley met with Clark's son at the farm. Finley observed that two of the eight sites determined to be wetlands were now filled. In a letter dated December 10, 2004, Finley identified the filled areas and stated, "These areas met the criteria of wetlands which are hydric soils, wetland plants and soil or surface wetness. Your manipulation by filling in on this wetland area is considered an alteration that makes the area more farmable which is a violation of the Swampbuster provisions . . . ." Having received no request for a minimal effect determination nor advance notification regarding the nature of Clark's proposed manipulation of the two wetland sites, Finley conducted no minimal effect investigation and made no minimal effect determination.

When Finley's wetlands and converted wetlands determinations became final, Clark appealed to the County Farm Service Agency Committee and the USDA's National Appeals Division, losing her appeals at each step. She then sought and was

---

*proceed with issuance of a revised NRCS-CPA-026E notifying you of your wetland conservation compliance options with USDA programs. The appropriate Food Security Act exemptions will also be noted as well as any further action upon your part.*

(Emphasis added).

denied review from the Director of the National Appeals Division. The Director's denial of relief serves as the final agency action.

Clark then filed this suit in the district court. She sought a declaratory judgment alleging the USDA's action was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; was in excess of statutory jurisdiction, authority, or limitations or short of statutory rights; was without observance of procedure as required by law, and was unsupported by substantial evidence . . . ." She argued specifically that: (1) the USDA followed inadequate procedures when making the wetlands determination, and the evidence did not support the wetlands determination; (2) the USDA misinterpreted the term "converted wetland," the USDA applied an improper standard in making the converted wetlands determination, and the evidence did not support the converted wetlands determination; and (3) the USDA was required, but failed, to conduct a minimal effect determination regarding the manipulation of the two sites. The USDA contested each argument and also argued that Clark failed to adequately exhaust her administrative remedies.

The court determined that Clark had adequately exhausted her administrative remedies. The court then rejected all of Clark's arguments regarding the wetlands determination, the converted wetlands determination, and the minimal effect exemption. On appeal, the government does not renew its argument that Clark failed to exhaust her administrative remedies, and Clark does not renew her arguments regarding the wetlands determination. As such, we need not address these arguments further nor discuss the technical details of the wetlands determination.

Some additional facts are relevant to the issue of the converted wetlands determination. The Swampbuster provisions define a converted wetland as a wetland manipulated "for the purpose or to have the effect of making the production of an agricultural commodity possible if-- (i) such production would not have been possible

but for such action . . . ." 16 U.S.C. § 3801(a)(6)(A)[4]. Clark relied upon the statutory language "possible" and "not have been possible" and argued that the USDA erred by determining the two wetlands she filled were converted wetlands without first proving the wetlands' pre- and post-manipulation capability to support "the production of an agricultural commodity." Id. In making this argument, Clark urged the court to interpret the word "possible" in a strict manner such that a wetland is not a converted wetland if it is capable of supporting any quantity or quality of agricultural commodity production. She also urged the court to find that the USDA had a duty to prove the wetlands could not support the production of agricultural commodities prior to the manipulation but could support such production after the manipulation. She argued that the USDA merely presented evidence showing that agricultural

_____

[4]The full statutory definition is as follows:

(A) The term "converted wetland" means wetland that has been drained, dredged, filled, leveled, or otherwise manipulated (including any activity that results in impairing or reducing the flow, circulation, or reach of water) for the purpose or to have the effect of making the production of an agricultural commodity possible if--
    (i)     such production would not have been possible but for such action; and
    (ii)    before such action--
        (I)    such land was wetland; and
        (II)   such land was neither highly erodible land nor highly erodible cropland.
(B) Wetland shall not be considered converted wetland if production of an agricultural commodity on such land during a crop year--
    (i)     is possible as a result of a natural condition, such as drought; and
    (ii)    is not assisted by an action of the producer that destroys natural wetland characteristics.

16 U.S.C. § 3801(a)(6).

commodities had not been grown on the two sites, not that agricultural commodities could not have been grown on those sites.

Evidence relevant to the production of agricultural commodities included aerial photographs from 1985 on. These photographs showed no cropping on any of the eight wetlands prior to the bulldozing activity and no cropping on the six unfilled wetlands after the bulldozing activity. The photographs did show cropping on the two filled wetlands after the bulldozing activity. Further, Clark admitted in her filings before the district court that her purpose in manipulating the land was to convert the land from use as a pasture to use for growing agricultural commodities. Finally, Finley testified that he was told someone had attempted to grow agricultural commodities on the two now-filled wetlands at some point in the past, before Clark filled the wetlands. He had no information, however, regarding the success of those efforts.[5]

The district court presented several bases for rejecting Clark's arguments. First, the court rejected Clark's request to apply a strict, literal definition for the statutory

_____

[5]Clark asserts that agricultural commodities grew on the now-filled wetlands in the past, prior to her filling the wetlands. In support of this assertion, however, she cites only to Finley's inconclusive testimony regarding hearsay reports of attempting cropping. Finley's testimony was as follows:

A.  The only evidence I can show is that during certification of agriculture commodity that piece has never been farmed and they did try to farm it. Prior to converting it actually the operator did drive through there and try to plant agriculture commodity. What he produced I cannot answer that.

Q.  In fact, what knowledge you do have is that there was production in there, you just don't know what the results were; is that correct?

A.  Correct. He drove through it and that's prior to converting it or leveling it, filling it.

term "possible." Instead, the court accepted the USDA's position that a practical interpretation should apply to the statutory term "possible," i.e., manipulations to wetlands that make the wetlands more suitable for farming qualify as the conversion of wetlands. Second, the court rejected Clark's argument that the USDA was required to prove that the wetlands, post-manipulation, could produce agricultural commodities. The court emphasized that the statute prohibits manipulations "*for the purpose* or to have the effect of making the production of an agricultural commodity possible." Id. (emphasis added). Finally, the court found the evidence the USDA relied upon sufficient to support the agency's action because the evidence demonstrated clearly that the purpose of the manipulations was to make the two wetlands more suitable for cropping, and there was no evidence of prior successful cropping on the manipulated wetlands.

Clark's argument regarding a minimal effect exemption was legal in nature. Clark argued that the USDA has an obligation in all cases to conduct a minimal effect investigation and issue a minimal effect determination. She argued that the USDA always bears the burden of proving a manipulation has more than a minimal effect. In fact, the relevant statutory provision does not state whether the USDA or the landowner bears the burden to prove eligibility for a minimal effect exemption.[6] The

---

[6]The relevant portion of the statutory provision is as follows:

(f) Minimal effect; mitigation

The Secretary shall exempt a person from the ineligibility provisions of section 3821 of this title for any action associated with the production of an agricultural commodity on a converted wetland, or the conversion of a wetland, if 1 or more of the following conditions apply, as determined by the Secretary:

(1) The action, individually and in connection with all other similar actions authorized by the Secretary in the area, will have a minimal

USDA, however, issued a regulation that places the burden of proof on the landowner if the landowner converts a wetland without first asking the USDA to make a minimal effect determination. As noted above, Clark did not request such a determination prior to her manipulation of the wetland. Also, Clark did not present any evidence on the issue of whether her manipulations had more than a minimal effect. Given this posture, Clark's challenge was a facial challenge to the validity of the USDA's burden-assigning regulation. The district court rejected Clark's argument, finding that the USDA's burden-assigning regulation was consistent with, and a permissible construction of, the statute.

## II. Discussion

### A. Standard of Review

We review the district court's judgment de novo. Cent. S.D. Coop. Grazing Dist. v. Sec'y of the U.S. Dep't of Agric., 266 F.3d 889, 894 (8th Cir. 2001). Like the district court, however, we review the USDA's action under a deferential standard. Id. We will not disturb the USDA's action unless it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," id. § 706(2)(C). See 7 U.S.C. § 6999 ("A final determination of the Division shall be reviewable and enforceable by any United States district court of competent jurisdiction in accordance with chapter 7 of Title 5.").

---

effect on the functional hydrological and biological value of the wetlands in the area, including the value to waterfowl and wildlife.

16 U.S.C. § 3822.

This case turns largely on questions of statutory interpretation. "[W]hen an agency invokes its authority to issue regulations, which then interpret ambiguous statutory terms, the courts defer to its reasonable interpretations." Fed. Express Corp. v. Holowecki, 128 S. Ct. 1147, 1154 (2008); see also Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-45 (1984). We have interpreted this deference as amounting to "controlling weight unless [the regulation is] 'arbitrary, capricious, or manifestly contrary to the statute.'" Friends of Boundary Waters Wilderness v. Bosworth, 437 F.3d 815, 822 (8th Cir. 2006) (quoting In re Old Fashioned Enters., 236 F.3d 422, 425 (8th Cir. 2001)). When an agency's interpretation of a statute is presented in a less formal manner that "does not appear to have 'the force of law,'" however, it is not entitled to this high level of deference. St. Mary's Hosp. v. Leavitt, 416 F.3d 906, 914 (8th Cir. 2005) (quoting Christensen v. Harris County, 529 U.S. 576, 587 (2000)). In such circumstances, the agency interpretation "is entitled to respect to the extent it has the power to persuade." Id. (internal quotation omitted). As the Supreme Court recently articulated:

> Assuming these interpretive statements are not entitled to full Chevron deference, they do reflect "'a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" Bragdon v. Abbott, 524 U.S. 624, 642 (1998) (quoting Skidmore v. Swift & Co., 323 U.S. 134 (1944)). As such, they are entitled to a "measure of respect" under the less deferential Skidmore standard. Alaska Dept. of Environmental Conservation v. EPA, 540 U.S. 461, 487, 488 (2004); United States v. Mead Corp., 533 U.S. 218, 227-239 (2001).

Fed. Express Corp., 128 S. Ct. at 1156.

B. Converted Wetlands

As noted, the dispute regarding the USDA's converted wetlands determination centers on the word "possible" as used in the phrases "making the production of an agricultural crop possible" and "such production would not have been possible." 16

U.S.C. § 3801(a)(6)(A). Clark argues for a strict definition of the term "possible" that would exempt from Swampbuster protection any land upon which any quantity or quality of agricultural commodity could have been grown prior to manipulation. The USDA interprets the term "possible" in a practical sense, treating as conversion those actions that make a wetland *more suitable* for growing agricultural commodities. See National Food Security Act Manual § 514.20(d) (3d ed., amend. 4, Sept. 1999) ("Making production possible means manipulation: which allows . . . production of an agricultural commodity where such production was not previously possible, or making an area farmable more years than previously possible, or which reduces crop stress and allows increased crop yields . . . ."). The USDA's position also is reflected in Finley's December 10, 2004 letter to Clark in which he stated, "Your manipulation by filling in on this wetland area is considered an alteration that *makes the area more farmable* which is a violation of the Swampbuster provisions." (Emphasis added).

"If the plain language of the statute is unambiguous, that language is conclusive absent clear legislative intent to the contrary. Therefore, if the intent of Congress can be clearly discerned from the statute's language, the judicial inquiry must end." United States v. McAllister, 225 F.3d 982, 986 (8th Cir. 2000) (internal quotation omitted). In reviewing statutory language, we do not read individual words in isolation, but rather, we read them in the context in which they are used and in the context of the statute as a whole. In re Benn, 491 F.3d 811, 814 (8th Cir. 2007). Read in isolation, the term "possible" might appear unambiguous, and Clark's strict interpretation might seem appropriate. We believe, however, that read in context, the phrases containing the word "possible" are ambiguous. The phrases describe the production of agricultural commodities—commercial biological processes in which success might be measured by several different standards, for example, strictly in terms of technical growth or in terms of commercial feasibility.

As aptly noted by the district court, Clark's position, if accepted, would exclude from protection all wetlands that were in any measure farmable prior to manipulation.

-11-

The USDA described Clark's position as follows, "[Clark's] construction would mean that, if the land could have occasionally produced one stunted ear of corn or pod of soybeans prior to being filled, there could be no conversion of a wetland triggering the [16 U.S.C.] § 3821 bar on participation in federal farm programs." Appellee's brief at 17. We agree that such a result would be absurd as it would remove from protection vast areas of wetlands. We find no suggestion in the Swampbuster provisions that Congress intended to exclude from protection all wetlands that might support some de minimis growth of agricultural commodities. Further, such an interpretation would be inconsistent with the general purpose of the statute, which we previously recognized as an effort "to combat the disappearance of wetlands through their conversion into crop lands . . . ." Gunn v. U.S. Dep't of Agric. 118 F.3d 1233, 1235 (8th Cir. 1997).

In addition, Clark's preferred interpretation would render the language of 16 U.S.C. § 3801(a)(6)(B)(ii) superfluous. That subsection provides that a wetland is not considered a converted wetland if natural conditions (e.g. drought) permit the occasional production of an agricultural commodity "not assisted by an action of the producer that destroys natural wetland characteristics." Id. Clark's interpretation of the term "possible" would necessarily exclude from the definition of converted wetlands any and all wetlands that might from time to time be production-capable regardless of whether or not a manipulation to the land "destroys natural wetland characteristics." Id. Under Clark's view, a categorical exemption would precede and render superfluous the manipulation limitation contained in § 3801(a)(6)(B)(ii).

The USDA's interpretation of the term "possible," as reflected in Finley's letter and in the National Food Security Act Manual, is not contained in a regulation born of the rulemaking process, and "does not appear to have the force of law." St. Mary's Hospital, 416 F.3d at 914 (internal quotations omitted). As such it is not entitled to the high level of deference afforded under the rule of Chevron, 467 U.S. at 843-45. Nevertheless, the interpretation arises from the agency's application of its

-12-

technological expertise based on "a body of experience and informed judgment" and is therefore entitled to respect.  <u>Skidmore</u>, 323 U.S. at 140.  For the reasons set forth above, we believe the USDA acted within its authority in interpreting an ambiguous statutory term, and we find the USDA's interpretation to be a persuasive, practical, and permissible interpretation of the statute.

Applying this definition, it is beyond dispute that Clark manipulated the wetlands in question for the purpose of making the production of an agricultural commodity more feasible.  She admitted this in her court filings and in a January 1, 2005 letter to the COE.  Because the definition of the term "converted wetland" focuses on "purpose" or "effect" in the alternative, the USDA was not required to prove that Clark, through manipulation of the wetlands, was successful in her efforts to "make the production of an agricultural commodity possible."  16 U.S.C. § 3801(a)(6)(A).

C.  Minimal Effect

Where there is a showing that the manipulation of a wetland has only a minimal effect, the agency is not to impose the ineligibility consequences otherwise applicable under the Swampbuster provisions of the Food Security Act.  16 U.S.C. § 3822(f), <u>supra</u> at n.6.  The statute, however, is silent and therefore ambiguous as to whether the agency or the landowner bears the burden of proving minimal impact as to any given piece of land.

Filling this void, the USDA passed a regulation[7] clear in its requirement that a landowner must consult with the USDA prior to manipulating a wetland or face the consequence of bearing the burden to prove the manipulations have only a minimal effect. The USDA argues its regulation is reasonable, because after manipulation, it would be substantially more difficult and technically challenging for the agency to prove what the wetlands' function or value might have been prior to alteration (as would be required as a basis for comparison to the wetlands function and value of the site after manipulation). Recognizing this technical challenge, the USDA argues it has reasonably imposed a duty on the landowner to request a determination in advance of any manipulation or to bear the burden of proof as a consequence of not seeking a pre-alteration determination.

Clark notes that Congress amended 16 U.S.C. § 3822(f) in 1990, replacing the phrase "The Secretary *may* exempt," with the phrase "The Secretary *shall* exempt." Pub. L. 101-624, Title XIV, § 1422, Nov. 28, 1990, 104 Stat. 3573. Clark argues generally that this amendment reflects a legislative desire to curb perceived resistance

---

[7]7 C.F.R. 12.31(d) provides:

Minimal effect determination. For the purposes of § 12.5(b)(1)(v) of this part, *NRCS shall determine* whether the effect of any action of a person associated with the conversion of a wetland . . . has a minimal effect on the functions and values of wetlands in the area. Such determination shall be based upon a functional assessment of functions and values of the wetland under consideration and other related wetlands in the area, and will be made through an on-site evaluation. *A request for such determination will be made prior to the beginning of activities that would convert the wetland. If a person has converted a wetland and then seeks a determination that the effect of such conversion on wetland was minimal, the burden will be upon the person to demonstrate to the satisfaction of NRCS that the effect was minimal.*

(Emphasis added).

from the USDA towards issuing such exemptions. We do not disagree with this general statement: the amendment clearly deprives the USDA of discretion where discretion previously existed, and following the 1990 amendment the USDA must grant such exemptions where a manipulation is shown to have a minimal effect.

The statute, even as amended, however, does not apportion the burden of proof regarding the technical determination of whether a manipulation has more than minimal effect. Nor does it contain any language suggesting the USDA is without authority to impose a burden of proof upon landowners who fail to request a determination prior to taking action likely to hinder the USDA in its assessment of the wetlands' pre-manipulation function and value. In fact, Congress remained silent as to the burden of proof and as to the requirement that a landowner request a minimal effect determination even though the USDA had adopted the final rules addressing these issues several years prior to Congress's amendment of the statute. See 52 F.R. 35194-01 (Sept. 17, 1987) (adopting the regulation now contained in 7 C.F.R. § 12.31(d)).

Further, the statute, both before and after amendment, refers to a manipulation as having a minimal effect "individually and in connection with all *other similar actions authorized by the Secretary* in the area . . . ." 16 U.S.C. § 3822(f)(1). This language appears to presume that any action subject to a minimal effect exemption would have been reviewed and authorized in advance by the USDA, not examined after the fact. At a minimum, this language suggests a statutory scheme consistent with Finley's letter, i.e., a scheme in which landowners notify the USDA in advance of their planned manipulations. Under such a scheme, it would be more technically feasible to conduct the before-and-after investigations necessary to make a minimal effect determination. Given these several bases for support and the high level of deference we owe to the agency's interpretation of the statute as set forth in the regulation, we must reject Clark's challenge.

Finally, to the extent Clark argues that the USDA failed to provide adequate procedures for informing and inviting landowners to request minimal effect determinations, her arguments are without merit. As quoted above, Finley's April 16, 2003 letter clearly instructed Clark not to fill the wetlands, notified her that the USDA's Natural Resource Conservation Service would inform her of her compliance options, and stated, "The appropriate Food Security Act exemptions will also be noted as well as any further action upon your part." The information provided to Clark, then, clearly anticipated further interaction with the USDA including an opportunity to address the availability of exemptions and compliance options for any proposed actions. Clark's unilateral action preempted this opportunity for information exchange and undercuts her procedural arguments.

III. Conclusion

We affirm the judgment of the district court.

_____