# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2729

_____

Arlen Foster

*Plaintiff - Appellant*

v.

United States Department of Agriculture; Tom Vilsack, in his official capacity as Secretary of the United States Department of Agriculture; The Natural Resources Conservation Service; Terry Cosby, in his official capacity as Acting Chief of the Natural Resources Conservation Service; Tony Suseri, in his official capacity as Acting South Dakota State Conservationist

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of South Dakota - Southern

_____

Submitted: March 21, 2023
Filed: May 12, 2023

_____

Before BENTON, ERICKSON, and KOBES, Circuit Judges.

_____

ERICKSON, Circuit Judge.

In this action, Arlen Foster maintains several administrative law claims against appellees. The district court[1] granted summary judgment in favor of appellees. We affirm.

## I. BACKGROUND

### A. Statutory and Regulatory Framework

The Secretary of Agriculture ("Secretary") is responsible for "delineat[ing], determin[ing], and certify[ing] all wetlands" and has authority to promulgate rules necessary to implement the provisions contained in 16 U.S.C. § 3821 et seq. ("Swampbuster Act"). 16 U.S.C. §§ 3801(a)(21), 3822(a)(1), 3846(a). The National Resources Conservation Service ("NRCS") is a federal agency that acts at the direction of the Secretary to certify wetlands and otherwise administer the Swampbuster Act. Id. § 3822(j); see 7 C.F.R. §§ 12.6(c), 12.30(a)(3). To preserve wetlands, the Swampbuster Act precludes farmers who convert wetlands or produce crops on converted wetlands from receiving certain farm-related benefits. See 16 U.S.C. § 3821(a)-(c); Clark v. USDA, 537 F.3d 934, 935 (8th Cir. 2008) (citation omitted). The Swampbuster Act generally does not prohibit farmers from converting or farming on artificial wetlands. See 16 U.S.C. § 3822(b)(1)(E), (b)(2)(A).

The Swampbuster Act and United States Department of Agriculture ("USDA") regulations work together to provide farmers with the right to request reviews of wetland certifications. The Swampbuster Act's review provision ("Swampbuster Review Provision") provides that a prior wetland certification "shall remain valid and in effect . . . until such time as the person affected by the certification requests review of the certification by the Secretary." Id. § 3822(a)(4). In turn, a regulation ("Review Regulation") provides procedural requirements a farmer must follow to make an effective review request. Specifically, a farmer "may

---

[1]The Honorable Roberto A. Lange, Chief Judge, United States District Court for the District of South Dakota.

request review of a certification only if a natural event alters the topography or hydrology of the subject land . . . or if NRCS concurs with an affected person that an error exists in the current wetland determination." 7 C.F.R. § 12.30(c)(6). Other regulations provide administrative appeal rights to persons subject to adverse certifications. See generally id. §§ 11.1, 11.9, 614.1. After exhausting administrative remedies, a farmer may seek judicial review of the NRCS's wetland determination in federal district court. See id. § 11.13(a); see also 7 U.S.C. §§ 6912(e), 6999.

## B.     Factual Background and Procedural History

Foster owns a tract of land in South Dakota that contains a tree belt. In the winter, snow accumulates around the tree belt. When the snow melts in the spring, some ponding in the nature of a shallow puddle can occur on a portion of the property ("Site"). In 2004, the NRCS certified the Site as a wetland. Following a 2008 request by Foster to review the certification, the NRCS reviewed the certification and in 2011 recertified the Site as a wetland. In the 2011 recertification, the NRCS specifically found that the Site is not an artificial wetland. Foster exhausted his administrative remedies and sought judicial review in the district court. The district court upheld the agency's determination as not arbitrary and capricious, this Court affirmed, and the Supreme Court declined to grant certiorari. See generally Foster v. Vilsack, No. CIV. 13-4060-KES, 2014 WL 5512905 (D.S.D. Oct. 31, 2014), aff'd 820 F.3d 330 (8th Cir. 2016), cert. denied 137 S. Ct. 620 (2017).

In 2017, Foster requested review of the 2011 recertification. The NRCS did not conduct the review, finding that Foster had failed to comply with the Review Regulation because he failed to provide new information that the NRCS had not previously considered. In 2020, Foster submitted a third review request, but this time, he also submitted an engineering report that opined that the Site's ponding is the result of the tree belt and is properly considered an artificial wetland outside the scope of the Swampbuster Act. The NRCS noted the opinion and asked Foster's engineering firm to identify any evidence that would show that the NRCS had not

-3-

fully considered the tree belt at the time of the 2011 recertification decision. Neither Foster nor the engineering firm ever responded to the request. Thereafter, the NRCS reviewed the engineering report, "compared [it] to the agency record," and declined to consider Foster's 2020 review request on the ground that the request did not comply with the Review Regulation.

In May 2021, Foster filed this action in the district court alleging that: (1) the Review Regulation contravenes the Swampbuster Review Provision; (2) the Review Regulation was never submitted to Congress or the Comptroller General as required by the Congressional Review Act ("CRA"); and (3) the NRCS's decisions to refuse to consider Foster's 2017 and 2020 review requests violated the Administrative Procedure Act ("APA"). The district court granted summary judgment in favor of appellees, holding: (1) the Review Regulation does not conflict with the Swampbuster Review Provision; (2) the CRA's judicial review provision precludes judicial review of Foster's CRA claim; and (3) the NRCS's decisions to decline to consider Foster's 2017 and 2020 review requests did not violate the APA. Foster appeals.

## II. DISCUSSION

"We review the district court's grant of summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in the light most favorable to . . . the nonmoving party." Kallail v. Alliant Energy Corp. Servs., Inc., 691 F.3d 925, 929 (8th Cir. 2012) (citation omitted).

Foster reasserts the claims raised below, urging this Court to find the district court erred in each of its three holdings. Specifically, Foster argues that the Review Regulation is in conflict with the Swampbuster Review Provision, the CRA does not preclude judicial review of his CRA claim, and the NRCS's decisions to decline to consider his 2017 and 2020 review requests violated the APA. We discuss each assertion in turn.

-4-

### A. The Swampbuster Review Provision and the Review Regulation

Foster contends the Review Regulation unlawfully conflicts with the Swampbuster Review Provision. He argues that the Review Regulation limits a farmer's right to request review of a wetland certification while the Swampbuster Act permits broad review upon request by a farmer. When asked to review whether a regulation is consistent with a statute, we apply the two-step framework from Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). See Voigt v. EPA, 46 F.4th 895, 900 (8th Cir. 2022) (citation omitted). We first consider whether the statute is ambiguous "us[ing] traditional tools of statutory construction," including the statute's "text, structure, history, and purpose." See Kisor v. Wilkie, 139 S. Ct. 2400, 2415 (2019); Voigt, 46 F.4th at 900-01 (alteration in original) (citation omitted). If the statute is unambiguous, we must simply apply it. Voigt, 46 F.4th at 901 (citation omitted). If the statute is ambiguous, we defer to and apply the agency's interpretation of the statute so long as it is reasonable. Id. (citation omitted); see Ameren Corp. v. FCC, 865 F.3d 1009, 1012 (8th Cir. 2017) (quoting Entergy Corp. v. Riverkeeper, Inc., 566 U.S. 208, 218 (2009)).

After closely reviewing the Review Regulation and the Swampbuster Act, we conclude the Review Regulation does not contravene the Swampbuster Review Provision. The Swampbuster Review Provision appears to us to suffer from some ambiguity related to whether it disallows regulations establishing procedural requirements for making effective review requests. We first consider the text of the statute, which provides that a wetland certification "shall remain valid and in effect . . . until such time as the person affected by the certification requests review." See 16 U.S.C. § 3822(a)(4). On one hand, by suggesting a certification is effective "until" a farmer requests review, the statute may reflect a Congressional intent to provide that a farmer's review request in and of itself voids a prior certification without the need to follow any procedural requirements like those enumerated in the Review Regulation. See also 142 Cong. Rec. S3038 (daily ed. Mar. 28, 1996) (statement of Sen. Richard Lugar) ("The agreement stipulates that current wetlands delineations remain valid until a producer requests a review."). On the other hand,

the Swampbuster Review Provision provides no direction as to what constitutes a proper review request and as a result may not preclude the existence of procedural requirements for making an effective review request.

The legislative history offers no clarification. In 1990, Congress amended the Swampbuster Act and adopted a version of the Swampbuster Review Provision that permitted the Secretary to update "wetland delineations as the Secretary deem[ed] appropriate." 16 U.S.C. § 3822(a)(4) (1990) (amended 1996). These amendments also made the Secretary responsible for creating a process to review wetland certifications to "provide farmers with certainty as to which of their lands are . . . wetlands." H.R. Rep. No. 101-916 (1990), as reprinted in 1990 U.S.C.A.A.N. 5286, 5436.

By 1996, members of Congress recognized the amendments had operated in a manner that increased uncertainty. Senator Grassley noted that after the amendments, the NRCS began conducting aerial photography to delineate new wetlands, which "caused a lot of anxiety and uncertainty for" farmers who could not operate with constantly-changing delineations. See 142 Cong. Rec. S4420 (daily ed. Apr. 30, 1996) (statement of Sen. Charles Grassley); see also 141 Cong. Rec. S1702-03 (daily ed. Jan. 27, 1995) (statement of Sen. Charles Grassley) (requesting a moratorium on new wetland delineations pending new legislation). As a result, Congress proposed new amendments in 1996, and senators expressed their understanding that these new amendments would "give farmers certainty . . . [by] allow[ing] prior delineations of wetlands to be changed only upon request of the farmer." 142 Cong. Rec. S4420. The 1996 amendments contained the current Swampbuster Review Provision. See 16 U.S.C. § 3822(a)(4) (1996) (amended 2008).

Foster suggests that when Congress amended the Swampbuster Act to permit only farmers to initiate reviews, it necessarily granted individual farmers the right to freely make review requests that automatically void prior wetland certifications. This is a broader reading of the statute than is supported by the legislative record.

The legislative history suggests that the sole purpose of the 1996 amendments was to promote certainty by preventing the NRCS from constantly changing wetland delineations. Nothing in the legislative history can be fairly read to evince a Congressional purpose to prevent the USDA from implementing a reasonable process to facilitate a farmer's ability to seek a new wetland determination.

Under Foster's interpretation, farmers could unilaterally nullify wetland certifications as the NRCS makes them by filing vague and facially-meritless review requests. This ability to request review would be without limit and would grant farmers the unfettered ability to render any attempted certification by the NRCS uncertain. The absurd results construction canon supports the validity of the Review Regulation. Because the relevant tools of construction demonstrate the Swampbuster Review Provision is ambiguous, we defer to the USDA's interpretation (as reflected by the Review Regulation) so long as it is reasonable.

The Review Regulation imposes reasonable procedural requirements a farmer must follow to make an effective review request and thereby delimit a prior wetland certification. Because the Swampbuster Review Provision is silent as to the nature of an effective review request, the Review Regulation does not conflict with the Swampbuster Review Provision. Moreover, from an economic perspective, the Review Regulation preserves agency resources by allowing the NRCS to refuse to consider facially-meritless review requests, and it promotes certainty among farmers by preventing farmers from nullifying certifications at will. We note our decision is consistent with an agency adjudication that addressed the same issue. See generally In re XXXXX, Case No. 2014E000753 (USDA June 22, 2016) (URL omitted). Because the USDA's interpretation is reasonable, we will defer to it and find the Review Regulation does not contravene the Swampbuster Review Provision.

## B.     CRA Claim

Foster next asserts the district court erred in finding the CRA's judicial review provision precludes review of his CRA claim. Under the CRA, "[b]efore a rule can

take effect, the Federal agency promulgating such rule shall submit [the rule] to each House of the Congress and to the Comptroller General." 5 U.S.C. § 801(a)(1)(A)(i). Congress may then pass a joint resolution disapproving the rule to nullify it and prevent the agency from reissuing another rule "in substantially the same form." Id. § 801(b). If Congress takes no action, the rule automatically takes effect. See id. § 801(a)(3). Finally, the CRA contains a judicial review provision, 5 U.S.C. § 805, which provides that "[n]o determination, finding, action, or omission under [the CRA] shall be subject to judicial review."

Because "legal lapses and violations occur" without consequences, "[t]here is a strong presumption that administrative action is subject to judicial review," and "[o]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." Mach Mining, LLC v. EEOC, 575 U.S. 480, 489 (2015); Clark v. United States, 482 F.2d 586, 590 (8th Cir. 1973) (citations omitted). Nevertheless, an agency may overcome the presumption of judicial review by showing there is no "substantial doubt" that Congress intended to bar judicial review. See Block v. Cmty. Nutrition Inst., 467 U.S. 340, 351 (1984). This Congressional intent may be "fairly discernible in" a judicial review provision's "express language, . . . structure[,] . . . its objectives, its legislative history, and the nature of the administrative action involved." Id. at 345, 351 (citations omitted); see also Clark, 482 F.2d at 590 (noting judicial review is unavailable "where a statute specifically precludes judicial review").

Here, the CRA's judicial review provision precludes review of Foster's CRA claim. Section 805 states that "[n]o determination, finding, action, or omission under [the CRA] shall be subject to judicial review." 5 U.S.C. § 805. This language is broad and unambiguous. It precludes judicial review of all omissions under the CRA, including those of agencies such as the USDA. Because Foster's CRA claim is based on the USDA's alleged omission in failing to submit the Review Regulation to Congress and the Comptroller General, we lack the authority to review his claim.

Foster contends § 805 does not apply because it only precludes review of alleged omissions of Congress as only Congress can engage in all four of the enumerated activities in § 805 (i.e., determinations, findings, actions, and omissions). But § 805's broad language covers all omissions under the CRA, including agency omissions, so whether an agency can make "determinations" and "findings" or take other "actions" under the CRA is irrelevant. Foster raises several other arguments against our interpretation, but we find the decisions of our sister circuits that have reached the same conclusion we have persuasive. See Kan. Nat. Res. Coal. v. U.S. Dep't of the Interior, 971 F.3d 1222, 1235-38 (10th Cir. 2020) (considering § 805's plain language, other canons of construction, and legislative history); Montanans for Multiple Use v. Barbouletos, 568 F.3d 225, 229 (D.C. Cir. 2009) (Kavanaugh, J.) (relying on § 805's plain language alone); see also Ctr. for Biological Diversity v. Bernhardt, 946 F.3d 553, 562-64 (9th Cir. 2019) (citations omitted) (adopting the Tenth's and D.C. Circuit's approaches when finding § 805 precluded review of a claim based on an action of Congress).[2]

## C.    APA Claim

### 1.    Exhaustion

Before reaching the merits of Foster's APA claim, appellees suggest Foster failed to exhaust his APA claim by failing to administratively appeal the NRCS's decisions to refuse to consider his 2017 and 2020 review requests. "[A] person shall exhaust all administrative appeal procedures . . . before the person may bring an action . . . against" the Secretary, the USDA, or "an agency, office, officer, or employee of the" USDA. 7 U.S.C. §§ 6902(1), 6912(e). Assuming without deciding that one of the exceptions applies, Foster's APA claim fails on the merits. See Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp., 440 F.3d 992, 999 (8th Cir. 2006)

---

[2]Foster suggests the Second and Federal Circuits have adopted his construction of § 805. However, the cited decisions do not address § 805. See Nat. Res. Def. Council v. Abraham, 355 F.3d 179, 201-02 (2d Cir. 2004); Liesegang v. Sec'y of Veterans Affs., 312 F.3d 1368, 1372-76 (Fed. Cir. 2002).

(determining §6912(e) sets forth an administrative exhaustion requirement and is non-jurisdictional and may be waived or excused).

## 2. APA Claim

Foster argues the district court erred by finding the NRCS's decisions to deny his 2017 and 2020 review requests did not violate the APA. Agency actions, findings, and conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" are to be set aside. 5 U.S.C. § 706(2)(A). "This is a highly deferential standard" providing a "narrow" standard of review. Org. for Competitive Mkts. v. USDA, 912 F.3d 455, 459 (8th Cir. 2018) (quoting FCC v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009)). While we must ensure an agency has considered "relevant data and articulate[d] a satisfactory explanation for its action," we are to uphold that action if it is "supportable on any rational basis." Id. (citation omitted). We will not interfere with agency action based on the agency's failure to fully explain its decision so long as "the agency's path may reasonably be discerned." Voigt, 46 F.4th at 900 (quoting Alaska Dep't of Env't Conservation v. EPA, 540 U.S. 461, 497 (2004)).

The NRCS's decisions to refuse to consider Foster's 2017 and 2020 review requests were not arbitrary and capricious because Foster failed to comply with the Review Regulation as he never provided evidence that a natural event altered the Site or that an error exists in the NRCS's current wetland certification. See 7 C.F.R. § 12.30(c)(6). Regarding Foster's 2017 review request, Foster does not assert that he complied with the Review Regulation. We find the NRCS's refusal to consider his 2017 review request was not arbitrary and capricious.

The NRCS also did not arbitrarily and capriciously decline to review Foster's 2020 review request because that request also failed to comply with the Review Regulation. While Foster asserts the NRCS unreasonably refused to consider the "new information" he provided in his engineering report, before the NRCS made any decision regarding the 2020 review request, the NRCS requested Foster's

engineering firm to identify evidence showing the NRCS had failed to consider the tree belt on the Site when it made its prior certification. The record shows no indication that Foster or his engineering firm responded to this request. After affording Foster an opportunity to provide the additional information, the NRCS denied the 2020 review request, noting Foster failed "to supply the specific information and data sufficient to justify a review." It "may reasonably be discerned" from the NRCS's decision and the record that the NRCS declined to consider the 2020 review request because Foster failed to show the NRCS's prior certification was erroneous in that it did not account for the tree belt. See Voigt, 46 F.4th at 900 (citation omitted). Because Foster failed to make this showing and did not otherwise claim there had been any natural change in the Site, he necessarily failed to comply with the Review Regulation.

## III.    CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____

-11-